## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| REGAN WILKES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CANYONS SCHOOL DISTRICT, et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [30] DEFENDANTS' PARTIAL MOTION TO DISMISS AMENDED COMPLAINT AND SETTING AN ORDER TO SHOW CAUSE HEARING ON APRIL 14, 2026**<br><br>Case No. 2:25-cv-00218-CMR<br><br>Chief Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings (ECF 17). 28 U.S.C. § 636(c). Before the court is Defendants Canyons School District and Canyons Board of Education's (Defendants or the District) Partial Motion to Dismiss Amended Complaint (Motion) (ECF 30). The court also considered Plaintiffs Regan and Brandon Wilkes' (Plaintiffs) Response to the Motion (Opposition) (ECF 32), and Defendants' Reply (Reply) (ECF 34). For the following reasons, the Motion is GRANTED IN PART, and an Order to Show Cause Hearing is set for April 14, 2026, at 10:00 A.M. to address arguments made in response to the Motion to Dismiss the Second and Sixth Causes of Action.

## I.    BACKGROUND

These facts are gathered from Plaintiffs' First Amended Complaint (ECF 26) (Am. Compl.) and the Exhibits attached thereto (ECF 26-1) (Exhibits).[1] Plaintiffs brought this action on behalf of their minor child, H.W. (Student), who has certain struggles as a result of his Autism Spectrum

---

[1] "In considering a motion to dismiss, a district court not only considers the complaint, 'but also the attached exhibits.'" *Floyd v. Lamrite W., Inc.*, No. 1:20-CV-99 TS, 2021 WL 1550815, at *2 (D. Utah Mar. 18, 2021) (quoting *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011)).

Disorder (Am. Compl. ¶ 19 & 22). Student previously attended Indian Hills Middle School, a public school governed by Defendants (*id*. ¶¶ 19, 23). This action involves assessing whether Defendants properly provided an education program that appropriately addressed Student's individual needs, considering his disabilities.

### A. Elementary School

In 2017, while Student was in kindergarten, he was determined to be eligible for an Individualized Education Program (IEP) under the classification of "Autism for social and emotional dysregulation" (*id*. ¶¶ 21–22, 49). Kindergarten and first grade show Student had early academic success (*id*. ¶ 53). While in second grade, a new IEP was developed, allegedly based on old evaluation data (*id*. ¶ 56). By third grade, Student's academic success began to decline (*id*. ¶ 57). By the end of fourth grade, Student's end-of-year academic results allegedly put Defendants on notice that additional assessment was necessary (*id*. ¶ 60). Fifth grade was Student's final year of elementary school, and he was allegedly still falling further behind (*id*. ¶¶ 68–71, 75).

Plaintiffs allege that they communicated their belief that Student had a continued need for an IEP going into middle school (*id*. ¶ 77). On May 12, 2023, an IEP meeting was held in which Defendants determined that Student was ineligible for Special Education, resulting in Student not having an IEP and instead being placed on a plan under Section 504 of the Rehabilitation Act of 1973 (504 Plan) (*see id*. ¶¶ 78–82, 85–86). Plaintiffs allege many issues with the way this meeting was conducted and the manner in which the result was reached; primarily asserting that Defendants' decision was "premeditated" and declared by "an incomplete IEP Team lacking Special and General Education teachers" (*id*. ¶¶ 62–64, 79–83). Plaintiffs allegedly opposed the change from an IEP to a 504 Plan, but within minutes, the 504 plan was created (*id*. ¶¶ 85–86).

Due to the Defendants' determination that Student was ineligible for an IEP, Student transitioned into middle school without an IEP.

### B. Middle School

Plaintiffs claim that Student's transition into middle school (sixth grade) without an IEP "proved disastrous" (*id*. ¶ 90). While in sixth grade, Student experienced "difficulty regulating, focusing, and completing work in the classroom, resulting in failing grades and nightly crises at home," and by Fall of 2023, Student began to exhibit signs of school failure (*id*. ¶¶ 91–97). Plaintiffs allegedly consistently expressed concerns to Student's teachers and school administration via email and in person (*id*. ¶¶ 98–100). Multiple modifications to the 504 Plan were made, but Plaintiffs were frustrated that accommodations were not implemented (*id*. ¶¶ 101–107, 117, 119, 127–128). When first quarter grades came out on October 27, 2023, Student had a D+ in Math and an F in Social Studies (*id*. ¶ 108). By the second week of the second quarter, Student was failing Orchestra and Math (*id*. ¶ 109).

On December 7, 2023, Plaintiffs requested that Student be re-evaluated for Special Education so that Student could return to an IEP (*id*. ¶ 112). On December 18, 2023, Defendants refused to re-evaluate Student for Special Education (*id*. ¶ 115). On January 11, 2024, Student's end of second quarter grades were as follows: D+ (Math), C (Orchestra), C (Science), F (Social Studies), C+ (STEM) (*id*. ¶ 118). At this time, the student began to demonstrate school refusal (i.e., an unwillingness or hesitancy to attend school) (*id*. ¶¶ 120–122). Plaintiffs requested that Defendants conduct a Functional Behavior Assessment (FuBA) (*id*. ¶ 122). Defendants agreed to conduct the FuBA, but the assessment was never conducted (*id*. ¶¶ 122–126, 137). On March 1, 2024, Plaintiffs, now represented by counsel, requested a Special Education Evaluation, which Defendants agreed to (*id*. ¶ 132). Student's refusal to go to school allegedly became so severe that

Plaintiffs removed Student from school but arranged for Student to return to school to take Special Education assessments (*id*. ¶¶ 135–136).

After two IEP meetings held on May 28, 2024, and May 30, 2024, Student was found to re-qualify for an IEP "with a specific learning disability in social/emotional learning, communication, mathematics and writing" with Autism being Student's primary disability (*id*. ¶ 138–139). Student entered seventh grade with an IEP, and on August 14, 2024, a meeting was held to review the IEP with Student's new teachers (*id*. ¶ 148). Plaintiffs assert several issues with this meeting and claim that they "did not have sufficient time to make sure teachers understood Student's past experiences and accommodation needs" (*id*. ¶¶ 148–156). After continued issues at school, by September 10, 2024, Student stopped attending, and Plaintiffs attempted to enroll him in another district but were denied (*id*. ¶¶ 157–161).

### C. Due Process Hearing

Plaintiffs filed for a Due Process Hearing under the Individuals with Disabilities Education Act (IDEA) on October 16, 2024, and a Due Process Hearing was held on December 13, 16, 19, 20, 2024 (*id*. ¶¶ 161–162). The Due Process Hearing Officer (Hearing Officer) issued a Due Process Decision and Order (Due Process Decision) (*id*. ¶¶ 169-171, 199) on March 3, 2025, denying Plaintiffs' Complaint (ECF 30-1).[2] Plaintiffs assert that the Hearing Officer made various procedural and substantive errors (*id*. ¶¶ 169–205). Plaintiffs have brought this action to appeal

---

[2] The Amended Complaint specifically refers to the Due Process Decision and Order (Due Process Decision) (*id*. ¶¶ 171, 199), but Plaintiffs did not attach the Due Process Decision to the Amended Complaint. Defendants attached a copy of the Due Process Decision to its Motion (ECF 30-1). "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Burke v. Holdman*, 750 Fed. Appx. 616, 620 (10th Cir. 2018) (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Id*. Because the Amended Complaint references the Due Process Decision, and it is central to Plaintiffs' appeal, this court may consider it when reviewing Defendant's motion to dismiss without converting the Motion to a motion for summary judgment.

the Due Process Order and have asserted various Causes of Action under Federal and State law (*id*. ¶ 207).

On July 3, 2025, Plaintiffs filed their Amended Complaint asserting the following six Causes of Action: (1) Due process and equal protection violations of the Civil Rights Act, 42 U.S.C. § 1983 (§ 1983), (2) Violations of the Individuals with Disabilities Education Act, *see* 20 U.S.C. § 1400 *et seq.* (IDEA), (3) Violations of the Rehabilitation Act, *see* 29 U.S.C. § 794 (§ 504), (4) Violations of the Americans with Disabilities Act, *see* 42 U.S.C. §§ 12131–34 (ADA), (5) Violations of the Utah State Constitution, (6) and Deliberate Indifference to Known Conditions and Regulatory Requirements (Am. Compl. ¶¶ 211–541). Defendants' Motion seeks dismissal of Plaintiffs' First Cause of Action alleging violations of § 1983, partial dismissal of the Second Cause of Action brought under IDEA, dismissal of the Fifth Cause of Action brought under the Utah State Constitution, dismissal of the Sixth Cause of Action for Deliberate Indifference to Known Conditions and Regulatory Requirements, and dismissal of the claim for punitive damages (ECF 30 at 2, 18).

## II.    LEGAL STANDARDS

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In this review, a "court accepts as true well-pleaded factual allegations and views the allegations in the light most favorable to the

plaintiff, drawing all reasonable inferences in the plaintiff's favor." *Hendershot v. Gurstel L. Firm, P.C.*, No. 2:20-cv-00118-DBB-DAO, 2020 WL 8083573, at *2 (D. Utah Dec. 17, 2020) (citing *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013)), *report and recommendation adopted*, 2021 WL 76163 (D. Utah Jan. 8, 2021).

Moreover, "[i]n considering a motion to dismiss, a district court not only considers the complaint, 'but also the attached exhibits.'" *Floyd v. Lamrite W., Inc.*, No. 1:20-CV-99 TS, 2021 WL 1550815, at *2 (D. Utah Mar. 18, 2021) (quoting *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011)).

## III.    DISCUSSION

### A.  First Cause of Action: Alleged Violations of § 1983

Plaintiffs assert two § 1983 violations: Violation of the Fourteenth Amendment's Due Process Clause; and Violation of the Fourteenth Amendment's Equal Protection Clause (collectively, § 1983 Claims) (Am. Compl. ¶¶ 211–289). The court finds that the § 1983 Claims are dismissed without prejudice for the reasons below.

i.     *The Amended Complaint does not have well-pleaded allegations that the § 1983 Claims are distinct and independent causes of action from the IDEA, ADA, and § 504 claims*.

Defendants argue that the § 1983 Claims should be dismissed because Plaintiffs cannot "use alleged violations of the ADA, Section 504, and IDEA to support a Section 1983 claim" (ECF 30 at 6). In support of their position, Defendants cite three cases which the court finds persuasive on this issue: *Watkins v. Jordan Sch. Dist.*, No. 2:19-CV-00407-PMW, 2020 WL 2617928 (D. Utah May 22, 2020); *Turner v. Alpine Sch. Dist.*, No. 2:19-cv-00870-TS-DAO, 2020 WL 5659386 (D. Utah Sept. 23, 2020)); and *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cnty. of Denver, Colo.*, 233 F.3d 1268 (10th Cir. 2000).

In *Turner*, the plaintiff alleged a claim under § 1983 "for the violation of statutory rights provided by the ADA and the Rehabilitation Act." 2020 WL 5659386, at *1 (citation omitted). This court ruled that, although there is no binding Tenth Circuit precedent specifically addressing whether § 1983 claims can be used for violations of rights under the ADA and § 504, multiple other circuit and district courts agree that the ADA and Rehabilitation Act include comprehensive enforcement mechanisms that prevent § 1983 claims for violations of these statutes. *Id*. at *2–3. Accordingly, this court determined that "[t]he ADA and Rehabilitation Act have comprehensive enforcement schemes that preclude § 1983 claims *based solely* on violations of those laws." *Id*. at *3 (emphasis added). This court in *Watkins* held the same, specifically finding that a plaintiff "may not bring a cause of action under § 1983 to vindicate rights *created* by the ADA and § 504." 2020 WL 2617928, at *4 (emphasis added). In *Padilla*, the Tenth Circuit reversed the denial of a motion to dismiss, holding that § 1983 "may not be used to remedy IDEA violations." 233 F.3d at 1274.[3]

Taken together, the Tenth Circuit held that § 1983 may not be used to remedy IDEA violations, and this court has likewise concluded that the ADA and Rehabilitation Act contain comprehensive enforcement mechanisms that preclude § 1983 claims based solely on violations of those statutes. *See Padilla*, 233 F.3d at 1274; *Turner*, 2020 WL 5659386, at *3; *Watkins*, 2020 WL 2617928, at *4.

Defendants argue that Plaintiffs' § 1983 Claims are based solely on violations of the ADA, § 504 and or IDEA because "[t]he crux of [these claims] is that Student has been deprived of a free appropriate public education [FAPE]" (ECF 30 at 7 (citing Amend. Compl., ¶¶ 211–27, 257–72)).

---

[3] Plaintiffs rely *on Luna Perez v. Sturgis Public Schools*, 598 U.S. 142 (2023), but that decision does not address the issue presented here. *Luna Perez* confirms that IDEA's exhaustion requirement does not bar lawsuits under other federal laws when plaintiffs seek remedies unavailable under IDEA. *Id*. at147. It does not hold that § 1983 may be used to remedy IDEA violations. Whether Plaintiffs have satisfied IDEA's exhaustion requirement is not at issue in this case. *Luna Perez* is therefore not relevant to the present analysis.

In response, Plaintiffs argue that the particular facts in this case "can be used as evidence for multiple causes of actions, any of which may apply to violations of state and constitutional rights" (ECF 32 at 4). Although Plaintiffs assert a correct principle, as mentioned above, a § 1983 claim may be asserted alongside statutory claims so long as the § 1983 claim is supported by more than just assertions of statutory violations, and does not seek to vindicate rights created solely by the statutes. By applying this standard to Plaintiffs' § 1983 Claims, the court finds that the § 1983 Claims are insufficiently pled.

### a. Fourteenth Amendment's Due Process Claim

The First Cause of Action asserts violations of the Due Process Clause, but the supporting factual allegations are based on alleged violations of various statutory protections, primarily those under IDEA. The First Cause of Action claims that Defendants deprived Student of "federal constitutional and statutory rights by failing and refusing to provide Student with the educational and public service accommodations and modifications guaranteed by the Due Process Clause" (Am. Compl. ¶ 221). Plaintiffs also allege that Defendants violated due process by removing Student from his IEP and not following certain procedures related to the IEP process, including failing to include necessary educators in meetings, not conducting meetings in a timely manner, and not complying with federal and state laws governing special education procedures (*id*. ¶ 224). Importantly, this claim states that "[s]ince Defendants continue to refuse to provide *the statutory protections* to which the Student is entitled, therefore, Plaintiffs' avenue for redress is appropriate under 42 U.S.C. § 1983" (*id*. ¶ 250 at 32) [4] (emphasis added). These allegations show that Plaintiffs aim to use § 1983 to enforce rights under statutory special education protections rather than to

---

[4] There appears to be a mistake in the paragraph numbers in that the numbered paragraphs are not always consecutive. For example, on pages 31 and 32 the numbers jump from ¶ 223 to ¶¶ 250–252 and then back to ¶ 224.

assert an independent constitutional violation. Therefore, the court finds that the First Cause of Action is not adequately pled and dismisses it without prejudice.

>    b.   Fourteenth Amendment's Equal Protection Claim

The First Cause of Action also claims that Defendants treated Student differently from similarly situated students by removing him from his IEP and thus denying him FAPE (Am. Compl. ¶ 260). Plaintiffs also allege that other students with disabilities in the District received FAPE, and that Defendants' actions amounted to unequal treatment (*id.* ¶¶ 260–262). The Complaint further states that "[w]hen a student is denied FAPE courts have repeatedly ruled it is a violation of Constitutional and Statutory provisions under both IDEA and 504" (*id.* ¶ 270). These allegations again frame the asserted constitutional violation as the denial of statutory rights, namely the right to FAPE under the IDEA and related disability statutes. Rather than clearly alleging intentional discrimination independent of those statutory protections, Plaintiffs appear to rely on the alleged denial of FAPE to establish the equal protection violation. Accordingly, the First Cause of Action is dismissed without prejudice.

## B.  Second Cause of Action: Alleged Violations of IDEA

Plaintiffs' Second Cause of Action alleges violations of IDEA. IDEA provides that a due process complaint "must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process complaint." 34 C.F.R. § 300.507(a)(2). This two-year limitations period is the statute of limitations on IDEA claims. *Alex W. v. Poudre Sch. Dist. R-1*, 94 F.4th 1176, 1184 (10th Cir. 2024) ("The IDEA did not always include a statute of limitations. *See* 20 U.S.C. § 1415(b)(6) (1999). In 2004, Congress added a two-year limitations period, codified in two separate sections of that statute: § 1415(b)(6)(B) and § 1415(f)(3)(C)"). The two-year limitation period may

be tolled under certain circumstances enumerated by 20 U.S.C. § 1415(f)(3)(D). These circumstances include: "(i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent." 20 U.S.C. § 1415; 34 C.F.R. § 300.511(f).

Defendants seek a partial dismissal of Plaintiffs' IDEA claim, asserting that it should be "limited to violations that occurred not more than two years before October 16, 2024," the date on which Plaintiffs filed their Due Process Complaint (ECF 30 at 12–14). Defendants offer two reasons in support of this request: (1) the Hearing Officer found that Plaintiffs did not introduce or identify evidence sufficient to satisfy the exceptions to the two-year statute of limitations (*id*. at 13 (citing Ex. A at 18)), and (2) the Amended Complaint fails to allege that an exception to the statute of limitations applies (*id*.). Defendants also highlight that the Amended Complaint includes legal arguments about the application of the two-year statute of limitations, but the cases cited to support these points are nonexistent and seem to be "AI-generated hallucinations" (*id*. at n.9).

Regarding Plaintiffs' apparent use of AI and their citing of non-existent cases, the Amended Complaint asserts that "Courts differ on whether the two-year period starts from the date of the alleged violation, the date the parent knew or should have known about the violation, or some other event" (Am. Compl. ¶ 427). In support of this assertion, the Amended Complaint cites the following non-existent cases, which allegedly establish various interpretations and applications of the statute of limitations: "9th Circuit (in *F.C. v. Capistrano Unified School District*)" (*id*. ¶¶ 428, 432); "4th *Circuit in A.D. v. Puyallup School District No. 3*, 2015" (*id*. ¶ 430); and "6th Circuit in *A.S. v. Norwalk Public Schools* (2017)" (*id*. ¶ 436). The Amended Complaint appears to

assert that the holdings of these hallucinated cases support Plaintiffs' assertion that the statute of limitations was tolled (*see id.* at ¶¶ 426–441).

The use of non-existent cases to support a cause of action in a complaint is a serious issue that the court cannot ignore or treat lightly. The Tenth Circuit recently ruled that relying on non-existent cases or citing actual cases that do not support the asserted propositions is sufficient grounds to dismiss an appeal before the Tenth Circuit. *Sifuentes v. Capital One*, No. 25-4123, 2026 WL 322610, at *2 (10th Cir. Feb. 6, 2026). *Sifuentes* highlights the seriousness of using non-existent cases and that such use is sufficient to dismiss the entire case, not just the claims which the non-existent case purports to support.[5] The harms of citing non-existent case law are particularly on display in this matter, as the Amended Complaint is 91 pages long. The use of even one non-existent case undermines the credibility of the entire document.

In addition to the practical and legal concerns with the use of non-existent holdings, what is particularly troubling here is Plaintiffs' lack of explanation for this blatant error—Plaintiffs did not respond at all to this argument (*see* ECF 32 at 7–8). Furthermore, this is not the first time that Plaintiffs' counsel has been admonished by this court for the improper use of AI (*see* Order to Show Cause (ECF 54), *Moulder v. Davis School District*, No. 1:25-cv-00052-TS-CMR (D. Utah Jan. 28, 2026)).

Due to Plaintiffs' use of non-existent case law to support their position regarding the application and interpretation of IDEA's two-year statute of limitations, the court reserves ruling on the Second Cause of Action and instead sets an Order to Show Cause hearing for Tuesday, April

---

[5] On March 3, 2026, Defendants filed a Notice of Supplemental Authority (ECF 37) referencing two Tenth Circuit opinions that provide more authority regarding the way courts have dealt with the issue of AI-generated hallucinations. Defendants reference: *Moore v. City of Del City*, No. 25-6002, 2025 WL 3471341, at *2–3 (10th Cir. Dec. 3, 2025); and *Amarsingh v. Frontier Airlines, Inc.*, No. 24-1391, 2026 WL 352016, at *5–8 (10th Cir. Feb. 9, 2026) (ECF 37 at 2). Both cases support the seriousness of using non-existent cases and holdings and the sanctions that can result from such actions.

14, 2026, at 10:00 A.M. During this hearing, the court will discuss possible sanctions for Plaintiffs' use of non-existent cases and the effect of this use on Plaintiffs' Second Cause of Action.

### C. Fifth Cause of Action: Alleged Violations of the Utah State Constitution

Plaintiffs' Fifth Cause of Action alleges violations of the Utah State Constitution, specifically, Article 1 § 1 and § 7, and Article X § 1 (Am. Compl. ¶¶ 510–532). Defendants assert that this claim must be dismissed because it does not satisfy the *Spackman* factors (ECF 30 at 14).

To recover monetary damages against governmental entities, including the Defendants, a plaintiff must establish that: (1) they suffered a flagrant violation of constitutional rights, (2) existing remedies do not redress their injuries, and (3) equitable relief is wholly inadequate to protect their rights or redress their injuries. *Spackman ex rel. Spackman v. Bd. of Educ. of Box Elder Cnty. Sch. Dist.*, 16 P.3d 533, 538–39 (Utah 2000). When these elements are not set forth in the complaint, as is the case here, dismissal for failure to state a claim is proper. *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 237–38 (Utah 2014) ("To survive a rule 12(b)(6) motion, the plaintiff also must allege that the violation was 'flagrant,' that alternative remedies would not redress the plaintiff's damages, and that equitable relief was 'wholly inadequate.'"(citing *Spackman,* 16 P.3d 533)). Defendants assert a failure to satisfy factors (2) and (3).

### i.    *Existing Remedies*

Regarding *Spackman* factor (2), Defendants argue Plaintiffs only assert that existing remedies have not addressed Student's injuries but fail to explain how the other four causes of action do not fully redress their rights, and instead, rely on conclusory allegations (ECF 30 at 15). The court agrees.

Plaintiffs assert that existing remedies do not address Student's injuries and suggest that "an appropriate remedy could also be fashioned by the court, even if no specific remedy is

mentioned by Plaintiffs" (Am. Compl. ¶¶ 526–527; ECF 32 at 10). Both claims are conclusory. Plaintiffs do not explain why federal remedies under § 1983, the ADA, and § 504 are inadequate. These statutes offer established relief mechanisms, and Plaintiffs present no injury outside their scope. They also offer no evidence that a court-created remedy would show existing remedies fail to redress their harms. Plaintiffs also allege IDEA is inadequate because no family has prevailed at Utah's due process hearing level in over seventeen years (Am. Compl. ¶ 528). They provide no authority showing that this historical success rate demonstrates inadequacy under *Spackman*.

For these reasons, the court finds that Plaintiffs failed to adequately plead that existing remedies do not redress their alleged injuries.

### ii.    *Equitable relief*

Plaintiffs also fail to satisfy the third *Spackman* factor, which requires Plaintiffs to plead that that equitable relief is inadequate to protect their rights or redress their alleged injuries. Plaintiffs allege equitable relief is inadequate because monetary damages are unavailable under IDEA (Am. Compl. ¶ 531). This is conclusory and contradicts the Amended Complaint, which also alleges "compensatory damages" under IDEA (*id*. ¶ 544). Plaintiffs cannot claim that monetary relief is unavailable under IDEA while seeking compensatory damages under the same statute.

### D. Sixth Cause of Action: Deliberate Indifference to Known Conditions and Regulatory Requirements

Plaintiffs' Sixth Cause of Action asserts a claim of Deliberate Indifference to Known Conditions and Regulatory Requirements (Am. Compl. ¶¶ 533–541). As with their Second Cause of Action, the Amended Complaint cites non-existent legal authority to support the Sixth Cause of Action. Specifically, the Amended Complaint misrepresents the facts and holdings of *J.M. v. Francis Howell School District*, 850 F.3d 944 (8th Cir. 2017), which is a real case, but the asserted

holding of this case is not accurate (Amend. Comp. ¶¶ 535–536). Defendants request that the court dismiss the Sixth Cause of Action in its entirety due to Plaintiffs' use of non-existent case law to support this claim (ECF 30 at 17).

In response, Plaintiffs assert that they have committed a "mere scrivener's error" and that dismissal would be inappropriate because "1) Plaintiffs provided fair notice of the claim despite the error and 2) Minor errors should not be used to justify dismissal" (ECF 32 at 11). In short, Plaintiffs argue this claim should not be dismissed because "Defendants have failed to argue that this cause of action should be dismissed on its merits. Indeed, they simply identify a citation error from a single paragraph and ask the court to invalidate the cause of action 'in its entirety' as a result" (*id.*). Plaintiffs also justify their misrepresentations because their "legal team consists of two solo practitioners, one intern, and a new paralegal" and that they do not have the "resources of large firms who can afford LexusNexus, Westlaw, or Special Education Connection" (*id.*).

Plaintiffs provide no legal support to replace the fabricated holding in *J.M. v. Francis Howell School District*. Accordingly, for the same reasons stated earlier regarding Plaintiffs' use of AI in support of their Second Cause of Action, the court reserves ruling on the Fifth Cause of Action and will address the possible effect of Plaintiffs' inappropriate use of AI on these claims during the Order to Show Cause Hearing set for April 14, 2024.

### E. Punitive Damages

Plaintiffs' Amended Complaint seeks punitive damages under Section 1983, ADA, and § 504 (Amend. Compl. ¶ 544(a), (c), (d)). Defendants argue that punitive damages against municipalities are barred under Utah law and relevant statutes (ECF 30 at 18 (citing *Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1307 (10th Cir. 2003) (finding that punitive damages against municipal agencies are barred by both § 1983 and Utah law); and *Barnes v. Gorman*, 536 U.S.

181, 190 (2002) (finding that punitive damages may not be awarded in private suits brought under the ADA or § 504))). The court agrees that the Amended Complaint fails to allege a claim for punitive damages, as the only named defendants in this action are municipal agencies.

Plaintiffs, in their Opposition, concede that "an *individual* is required to obtain punitive damages under § 1983" (ECF 32 at 12) (emphasis added). In response to only having named municipal entities as defendants in this action, Plaintiffs argue they "have filed a Motion for Joinder to add Principal Shelly Karren as a named Defendant" for the purpose of exposing Defendants to punitive damages (*see id*. at 12). Defendants argue the court should still deny the claim for punitive damages, as no claims are alleged against Principal Karren in the operative Amended Complaint and therefore no right to punitive damages exists (ECF 30 at 18).

At the motion to dismiss stage, the court evaluates the complaint as it stands, and a party "cannot amend [its] complaint through a brief in opposition to [a] motion to dismiss." *Ayres v. Portfolio Recovery Associates, LLC*, No. 2:17-CV-01088-DN, 2018 WL 6706021, at *1 (D. Utah Dec. 20, 2018) (citing *Huls v. Llabona*, 437 F. App'x 830, 832 n.5 (11th Cir. 2011)). The Amended Complaint contains no claims against any "individual," only municipalities, and thus provides no basis for punitive damages. Because punitive damages cannot be awarded against the named Defendants and the Amended Complaint asserts no viable claim against any individual, Plaintiffs' punitive damages claim is inadequately pled and dismissed without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS IN PART Defendants' Motion to Dismiss (ECF 30) and ORDERS as follows:

     a.   Plaintiffs' First Cause of Action for Alleged Violations of § 1983 is DISMISSED in its entirety without prejudice;

b. Plaintiffs' Fifth Cause of Action for Alleged Violations of the Utah State Constitution is DISMISSED in its entirety without prejudice;

c. Plaintiffs' claim for Punitive Damages is DISMISSED without prejudice; and

d. Regarding Plaintiffs' Second Cause of Action for Violations of IDEA, and their Sixth Cause of Action for Deliberate Indifference to Known Conditions and Regulatory Requirements, due to Plaintiffs' apparent use of non-existent cases and case holdings to support these causes of action, the court reserves ruling on these claims and sets an Order to Show Cause Hearing for Tuesday, April 14, 2026, at 10:00 A.M. During this hearing, the court will determine the effect of Plaintiffs' use of false law on these causes of action and possible sanctions.

DATED this 17 March 2026.

Chief Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah