Tyler Ayres – Bar No. 9200
AYRES LAW FIRM
136 West 12300 South, Suite 201
Draper, Utah 84020
Office: (801) 255-5555
Mobile: (801) 918-9506
tyler@ayreslawfirm.com

Amy L Martz – Bar No. 16508
MARTZ LAW
5438 West Bridle Vista Circle
West Jordan, Utah 84081
AmyLMartz@Protonmail.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| REGAN WILKES, et al.<br><br>Plaintiffs,<br><br>v.<br><br>CANYONS SCHOOL DISTRICT, et al.<br><br>Defendants. | **PLAINTIFFS' COUNSEL'S RESPONSE TO ORDER TO SHOW CAUSE**<br><br>Case No. 2:25-cv-00218-CMR<br><br>District Judge Ted Stewart<br><br>Chief Magistrate Judge Cecilia M. Romero |

Counsel for Plaintiffs, Tyler Ayres and Amy L. Martz, hereby submit this response in preparation for the Order to Show Cause Hearing set for April 14, 2026.

## I.    INTRODUCTION AND SINCERE APOLOGY TO THE COURT

Plaintiffs' counsel accepts full and unqualified responsibility for the failures in the formatting and citation errors in the First Amended Complaint. We offer our most sincere

apologies to this Court for the additional burden they have caused, including the necessity of this hearing and any efforts required to prepare for it.

As the Court is aware, this is the second case Martz and Ayres have had where similar mistakes occurred. In the first case, *Nicholas and Barbara Moulder v. Davis School District,* case no. 1:25 cv 00052, Judge Stewart imposed a sanction requiring Martz and Ayres to participate in three AI CLE courses to improve awareness and capability using AI. Martz and Ayres have additionally added staff for technical assistance and a Westlaw account for citation support.

Additionally, Martz and Ayres provided payment to Defense counsel of $1,525.50 for the work required to locate and bring the mistakes light. In this instance, Defense does not request a specific dollar amount as a sanction for the wasted time. Counsel has sent an e-mail to Defense counsel inquiring as to an amount for compensation. At this point, Plaintiff counsel has not received a reply. Rather, they seek the dismissal of the Deliberate Indifference claim.

Both of these cases were initiated in 2025. Both are cases against public school districts. Counsel worked on both of the cases using their old system for preparing documents at roughly the same time. The cases share similar legal arguments and requirements.

Plaintiffs' counsel acknowledges several of the citations provided to the Court were cited incorrectly. However, the cases were real and relevant to special education law. We accept full and unqualified responsibility for these distracting errors. We apologize to the Court for failing to ensure the accuracy of our filings, and we recognize these failures are unacceptable.

A scrivener's error is traditionally defined as an omission or mistake in writing or typing a document, such as a transcription error or a clerical slip. A scrivener's error is no more

acceptable to the Court than an AI-hallucinated case, as both disrupt the integrity of judicial filings.

There is a critical distinction in intent between the two errors. An AI hallucination involves the fabrication of non-existent law. It demonstrates an unwillingness to do the hard work of researching the law and applying it to the cases. In essence, it is a short cut to finding an acceptable answer for the production of a document. It is not a legitimate effort to move a case forward or protect the interests of Plaintiff. There was no intent to misstate the law or imply a precedent that was false.

The errors in this instance constitute a failure in the mechanical process of proofreading and attribution of the correct citations. Without making excuses, counsel believes these errors were missed in part because counsel was in the early process of working together and assigning tasks for proper completion. These mistakes are not a deliberate or even an inadvertent attempt to deceive; they are human clerical lapses. They do not alter the substantive legal meaning of Plaintiffs' assertions.

## II. THE AUTHENTICITY OF J.M. AND FARMER IN THE CONTEXT OF DELIBERATE INDIFFERENCE

Defendants argue the deliberate indifference claim (Sixth Cause of Action) relies on "non-existent" case law. The law in these cases certainly exists and Plaintiff's counsel applies it appropriately. The mistakes placed quotations around a topic sentence and then encapsulated one case within another.

**J.M. v. Francis Howell School District, 850 F.3d 944 (8th Cir. 2017):** This is a real, factually parallel case involving a student with disabilities who alleged civil rights violations by a school district. It was specifically chosen for its focus on the "deliberate indifference" standard in a special education context.

**Farmer v. Brennan, 511 U.S. 825 (1994):** This is the seminal Supreme Court case establishing a government official act with "deliberate indifference" when they [the government agents] possess actual knowledge of a substantial risk of harm and fail to act. Plaintiffs cited this case to establish the "subjective recklessness" requirement Defendants' conduct allegedly mirrored in disregarding Student's vulnerabilities.

### III.    CASE EXAMPLES IN STATUTE OF LIMITATION SECTION

Counsel cannot explain the case citation mistakes in ¶s 424 through 438. The writing is clearly original and alternates paragraphs on the position of the circuit courts with paragraphs applying the facts of this case. The variety of legal perspectives on the Individuals with Disabilities Education Act (IDEA) Due Process statute of limitation are accurate. The IDEA code listed is correct. Certain phrases such as "passing a pamphlet across the table during a meeting" are unique to counsel. Plaintiffs' counsel will clarify the miscited cases are real and applicable special education cases:

1.  *A.D. v. Puyallup School District No. 3*
2.  *F.C. v. Capistrano Unified School District*, 2018
3.  *A.S. v. Norwalk Public Schools* (2017)

**B.D. v. Puyallup School Dist., 2009 WL 2971753 (W.D.Wash.,2009)**

Defendants suggest the citation of *A.D. v. Puyallup School District No. 3*, 2015 is synthetic. The citation to the real case is inaccurate. The city of Puyallup is in fact in Washington. Washington is in the 9th Circuit, not the 4th Circuit.

Counsel accepts full responsibility for the inclusion of the citation to *A.D. v. Puyallup School District No. 3* (2015) in the First Amended Complaint. The actual authority involving the

Puyallup School District and the IDEA statute of limitations is *B.D. v. Puyallup School Dist., 2009 WL 2971753 (W.D.Wash.,2009)*

In *B.D. v. Puyallup* case, the court reviewed an ALJ's application of a strict two-year statute of limitations. The ALJ in that matter barred claims for conduct occurring before February 1, 2006, exactly two years prior to the filing of the due process complaint on February 1, 2008. Because the parents in *B.D.* did not challenge the ALJ's limitations ruling on judicial review, the court accepted the two-year "occurrence" window as the operative timeframe.

The central dispute of *Puyallup* concerns the "discovery rule" (also known as the "Knew or Should Have Known" or KOSHK standard) regarding the two-year timeline for parents to file a due process complaint under the IDEA.

The Ninth Circuit Court of Appeals established a strict standard for when the two-year "clock" begins to run. The court held the statute of limitations is triggered when parents discover the underlying facts of the alleged violation.

Despite the strict interpretation of the "discovery rule," the court acknowledged the IDEA provides two explicit exceptions that can "toll" (pause) the two-year statute of limitations. 1) -If the local educational agency (LEA) misrepresented it resolved the problem forming the basis of the complaint; or 2) -If the LEA withheld information from the parent that was required to be provided under the IDEA.

In the *Wilkes* litigation, the case is used to define the "floor" of the strictest possible legal standard. Plaintiffs cite *Puyallup* to show they understand the strict two-year lookback period is applied in some, but not all, circuits.

Plaintiffs argue even under a *Puyallup* standard, their claims should proceed because the Defendants thwarted their ability to safeguard their rights by backdating documents and withholding critical educational records, such as SLP logs.

Despite the circuit mislabel, the legal principle, the two-year period begins to run from the date of the alleged violation itself, is a real, albeit strict, interpretation used in legal scholarship to define the "occurrence" versus "discovery" rule.

### A.S. ex rel. v. Norwalk Bd. Of Education, 183 F. Supp. 2d 534 (D. Conn. 2002)

Plaintiffs refer to *A.S. v. Norwalk Public Schools* (2017) in their complaint. This is an incorrect citation as it should be referred to as *A.S. ex rel. v. Norwalk Bd. Of Education* 183 F. Supp. 2d 534 (D. Conn. 2002). Plaintiff accepts responsibility for the error in citation.

In this case the District Court affirmed a hearing officer's decision when a school board violated the IDEA by attempting to move a student with neurological and visual impairments from a mainstream setting to a segregated "Life Skills" program. The court held the Board failed the LRE (Least Restrictive Environment) test because it did not make reasonable efforts to accommodate the student in the regular classroom, specifically failing to provide direct special education teacher support within that setting. Crucially, the court ruled the student's failure to meet 33 of 35 IEP objectives was not a justification for a more restrictive placement; rather, it evidenced an inadequate IEP the Board was required to revise and reassess before proposing removal from the mainstream environment. The court emphasized a student's progress in a regular classroom, even if slow, precludes segregated placement if they can still derive educational benefit from inclusion with appropriate aids.

The *Norwalk* case is a vital authority for the Plaintiffs' because it directly mirrors the "disastrous" transition and subsequent removal of H.W. from his IEP. Just as the *Norwalk* court

found a student's failure to meet goals should trigger an IEP revision rather than a removal of services, H.W.'s failing grades and dysregulation in middle school should have triggered the Child Find mandate and specialized instruction, not continued reliance on an "inept" 504 plan.

Furthermore, *Norwalk* supports the Plaintiffs' argument regarding the exclusion of essential personnel; the court in *Norwalk* faulted the school for failing to include a special education teacher in the classroom, just as the Defendants here failed to include a special education teacher in H.W.'s May 2023 eligibility meeting.

**Capistrano Unified School District v. S.W., 2020 WL 5540186 (C.D. Cal. Aug. 19, 2020)**

Plaintiffs refer to a case *F.C. v. Capistrano Unified School District.* The correct citation is *Capistrano Unified School District v. S.W.*, 2020 WL 5540186 (C.D. Cal. Aug. 19, 2020), aff'd in part, rev'd in part, 21 F.4th 1125 (9th Cir. 2021). Plaintiffs accept responsibility for the erroneous citation.

*Capistrano Unified School District v. S.W*, is a case involving a minor plaintiff who challenged the Capistrano Unified School District's provision of special education services in the Central District of California under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 et seq.

The case arose in the context of the landmark Supreme Court decision in *Endrew F. v. Douglas County School District RE-1*(2017), which articulated a more specific standard for what constitutes a free appropriate public education (FAPE) under the IDEA. The full text of this particular 2018 district court decision is an unpublished opinion and is not reported in the standard law reporters.

The reference to *Capistrano Unified School District v. S.W*, is grounded in the well-documented history of litigation involving the Capistrano Unified School District (CUSD). It

was researched and included because it addressed the school district's substantive obligations immediately following the Supreme Court's landmark decision in *Endrew F. v. Douglas County School District RE-1*, 580 U.S. 386 (2017).

### IV. Representing Special Needs Children.

Counsels hopes to impress upon the court the great need our Utah community has for legal representation in the field of special education and disability law. For seventeen (17) years, not one parent/child won an Individuals with Disabilities Education Act (IDEA) Due Process Hearing in Utah. Not until 2022 was this abysmal record broken by a few parent/child wins. Parents and children are suffering from neglect by some school districts and a void of advocates and attorneys to support, educate, and protect them. Fewer than ten (10) attorneys in Utah are willing to take even a single case of this type, and only Counsel Martz does this work full-time.

In response to this great need. Martz and Ayres have recently combined their solo practices to work together on cases involving disabled children who are not getting the benefits the law provides. They accept these cases largely on a contingent basis in part because the families who have these issues are not in a position to pay counsel. We are truly the "David" to the "Goliath" of multiple Deputy Attorney General Attorneys and multiple Attorneys from the large firm of Fabian Vancott who combine forces and resources to oppose these families.

These cases are highly complex and require the understanding of multiple areas of law. Martz and Ayres believe they have complimentary education and experience to master education and disability law and represent clients effectively. We will continue to improve both our documents and advocacy as our knowledge and utilization of teams and tools progress. We are creating a unique opportunity to represent parties who find themselves in very desperate situations involving the wellbeing of their disabled children.

## V.    CONCLUSION

Counsel acknowledges falling short of the standard of meticulousness the Court reasonably expects of all counsel. However, at no time did counsel attempt deception of opposing counsel or the court. We respectfully ask that no sanctions be imposed and the deliberate indifference claims be adjudicated on their merits. Training on improved use of AI has been ordered, Counsel is actively registering for these CLE opportunities, additional trained staff have been added to the team, and access to Westlaw has been obtained. Counsel is confident these errors can be avoided in the future.

DATED this 10th day of April 2026

AYRES LAW FIRM
/s/  Tyler Ayres
Tyler Ayres
Attorney for Plaintiffs


MARTZ LAW
/s/ Amy L. Martz
Amy L. Martz
Attorney for Plaintiffs

## CERTIFICATE FOR SERVICE

We hereby certify that on this 10th day of April 2026, we caused a true and correct copy

of the foregoing **PLAINTIFFS' COUNSEL'S RESPONSE TO DEFENDANT'S NOTICE** to

be filed via the Court's electronic filing system, which sent a copy of the filing to the following:


Joan M. Andrews (7803)
Sarah C. Vaughn (14615)
FABIAN VANCOTT
95 South State Street, Suite 2300
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
Facsimile: (801) 596-2814
jandrews@fabianvancott.com
svaughn@fabianvancott.com

Vanessa R. Walsh (16180)
Nicole Johnston
UTAH ATTORNEY GENERAL
350 North State Street, Suite 230
Salt Lake City, UT 84114
Telephone: (801) 366-0260
vwalsh@agutah.gov
njohnston@agutah.gov


AYRES LAW FIRM
/s/      Tyler Ayres
Tyler Ayres
Attorney for Plaintiffs

MARTZ LAW
/s/ Amy L. Martz
Amy L. Martz
Attorney for Plaintiffs

# EXHIBIT P79



Tyler Ayres <tyler@ayreslawfirm.com>

---

**Wilkes v. Jordan School District**

**Tyler Ayres** <Tyler@ayreslawfirm.com>
To: Joan Andrews <jandrews@fabianvancott.com>
Cc: Amy L Martz <AmyLMartz@protonmail.com>

Mon, Mar 23, 2026 at 10:49 AM

Joan,

Thank you for your comments at the hearing for sanctions in Moulder. As I read your supplemental information I realized you were not requesting the additional fees and were simply representing your clients interests at the request of the Court.

Regarding the Wilkes matter. Upon review our attitude is the same. We take full responsibility. The error is ours.

We were working on both documents around the same time, utilizing the same deficient system.

I'm certain you expended additional time and resources for this one as well. Do you have a specific request for the time expended?

Please let me know as we are anxious to resolve this matter as well.

*Warm regards,*

*Tyler Ayres*

**Ayres Law Firm**
136 W 12300 S, Ste. 201
Draper, UT 84020
(801) 918-9506



**CONFIDENTIALITY NOTICE:** This email may contain attorney–client privileged and confidential information intended only for the named recipient. If you are not the intended recipient, please notify the sender immediately and delete this message. Unauthorized review, use, or distribution is prohibited. Please contact the office by calling (801) 255-5555 if you have any questions.

I do not check my emails on my phone regularly. If I don't get back to you in a reasonable time, please send a text as I check those as they come in.